UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| THE EMPLOYERS' FIRE INSURANCE COMPANY, | ) ) ) | |
|---|---|---|
| Plaintiff/Counter-Defendant, | ) ) ) | |
| v. | ) ) | No: 05 C 4710 Judge John W. Darrah |
| LAIRD T. BERG, | ) ) ) | |
| Defendant/Counter-Plaintiff. | ) | |

## MEMORANDUM OPINION AND ORDER

The underlying dispute is based upon Plaintiff/Counter-Defendant's, the Employers' Fire Insurance Company ("Employers' Insurance"), denial of uninsured motorist coverage benefits to cover injuries and damages that Defendant/Counter-Plaintiff, Laird T. Berg ("Berg"), sustained in an accident occurring on July 16, 2001. Employers' Insurance filed a Complaint for declaratory judgment on August 16, 2005; and on September 15, 2005, Berg filed a Counterclaim for the same relief. Currently before the Court are Employers' Insurance and Berg's Cross Motions for Summary Judgment.

## FACTS[1]

Berg has served as the President of Performance Tank, Inc. – which installs, maintains, and repairs above- and below-ground fuel tank systems, mainly at gasoline service stations in the

---

[1] Employers' Insurance has moved to strike portions of Berg's response to Employers' Insurance's statement of material facts, statement of additional facts, and the affidavits offered in support. Specifically, Employers' Insurance seeks to exclude: (1) evidence of Performance Tank's intent in negotiating the insurance contract, which Employers' Insurance asserts is barred by the parole evidence rule; and (2) portions of Berg's affidavit that are contradicted by his deposition testimony. To the extent Plaintiff's statements and responses violate Local Rule 56.1, they have been disregarded.

1

Chicagoland area – since Performance Tank's incorporation on April 3, 1990. In 2001, in addition to serving as Performance Tank's President, he also worked in the field, providing services to Performance Tank's customers. During 2001, Performance Tank had approximately thirteen employees, including office staff and employees who worked in the field.

Performance Tank owned several corporate vehicles, which were utilized by its employees for the purpose of traveling to and from job-sites, as well as for transporting supplies, tools, and equipment utilized by its employees in the installation, maintenance, and repair of fuel storage systems, including electronic monitoring components. One of these vehicles was a 2001 Jeep Cherokee. As President of Performance Tank, Berg obtained the original Business Automobile Insurance policy from Employer's Insurance. In December 2000, Berg participated in the negotiation of the renewal of the Business Automobile Insurance policy and authorized the payment of the insurance premium paid on behalf of Performance Tank to Employers' Insurance. The renewal policy covered the policy period between January 1, 2001 through January 1, 2002. The Jeep Cherokee was listed in Performance Tank's Employer's Insurance policy as a covered auto. Performance Tank's Business Auto Coverage Form defines "who is insured" under the liability portion of the insurance policy as follows:

1. Who is An Insured

    The following are "insureds":

    a. You for any covered "auto."

    b. Anyone else while using with your permission a covered "auto" you own, hire, or borrow except:

        (1)    The owner or anyone else from whom you hire or borrow a covered "auto." This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

2

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "auto" unless that business is yours.

(4) Anyone other than your "employees" partners (if you are a partnership), members (if you are a limited liability company), or lessee or borrower or any of their "employees," while moving property to or from a covered "auto."

c. Anyone Liable for the conduct of an "insured" described above but only to the extent of that liability.

d. Any employee of yours while using a covered "auto" you don't own, hire or borrow in your business or your personal affairs.

Business Auto Coverage Policy, at Section II(A)(1). Under the Uninsured Motorist Coverage section of the policy, "who is insured" is defined as follows:

B. Who is an Insured

1. You

2. If you are an individual, any "family member."

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its break-down, repair, servicing, loss or destruction.

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

Business Auto Coverage Policy, Uninsured Motorist Coverage Form at B.

On July 16, 2001, Berg drove the Jeep Cherokee to travel to a gasoline station at 3819 W. Belmont, in Chicago, Illinois, which was owned by a Performance Tank client who had requested service. Upon arriving at the service station, Berg parked the Jeep Cherokee. The Jeep Cherokee contained tools and equipment necessary to complete the work at the gasoline

3

station. Berg exited the vehicle, went inside the station, and then returned to his vehicle and lifted the rear hatch to access the tools and equipment. After selecting some of the tools and equipment, Berg went to the location of the in-ground fuel monitoring probes and sensors.

As Berg worked there, he was physically struck by a tow truck that was towing another vehicle from the premises. The tow truck's front bumper came into contact with Berg's shoulder, knocking him onto the ground; and the tow truck's front passenger-side tire rolled over the middle of Berg's body and came to a stop. Berg was about fifteen feet from the Jeep Cherokee, kneeling over a manhole cover, when he was struck by the tow truck.

After the incident, Berg was transported *via* ambulance to Illinois Masonic Medical Center, where he received medical treatment, which included emergency surgery.

The tow truck that struck Berg was licensed Northwest Muffler and Brake I, Inc., a company that had been dissolved by the Illinois Secretary of State prior to the date of the accident. Neither the owner nor the driver of the tow truck had any insurance coverage related to the operation of the tow truck. The tow truck that struck Berg was dispatched by Luis Muffler and Brake, Inc. This entity also did not have any insurance that provided coverage for this vehicle or its driver on the day of the occurrence.

In June 2002, Berg, through his attorney, notified Employers' Insurance of a claim for uninsured motorist benefits related to his accident. Employers' Insurance denied this claim, stating as a basis that Berg was not an insured under the policy that Employers' Insurance issued to Performance Tank.

In August 2005, Employers' Insurance filed a Complaint for declaratory judgment. In September 2005, Berg filed a Counterclaim for declaratory judgment.

4

## **LEGAL STANDARD**

Summary judgment is appropriate under Rule 56 (c) when no genuine issue of material fact exists or when, drawing all factual inferences in favor of the nonmoving party, no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992).

One of the "principal purposes" of awarding summary judgment is to "isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court that there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson*, 477 U.S. at 254-56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

This case is governed by Illinois choice-of-law rules, which require the application of Illinois substantive law to the interpretation of the insurance policy at issue. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Lapham-Hickey Steel Corp. v. Protection Mutual Ins. Co.*, 166 Ill.2d 520 (1995).

5

## ANALYSIS

The cross-motions for summary judgment rest on a single question: is Berg entitled to uninsured motorist coverage under the policy issued to Performance Tank by Employers' Insurance. The Illinois Insurance Code requires that every policy of automobile insurance that insures against loss from liability also contain coverage "for the protection of person insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease . . . resulting therefrom." 215 ILCS 5/143a (2001).

Berg asks the Court to grant summary judgment on his declaratory judgment action and to utilize the definition of "Who is an Insured" to determine whether Berg is an insured for the purpose of uninsured motorist coverage under the Employers' Insurance policy. Berg asserts that because the definition of "who is covered" is more restrictive under the Uninsured Motorist provision than it is under the Business Auto coverage section, Employers' Insurance has circumvented the purpose and public policy of the Illinois Insurance Code. Berg further asserts that the policy is ambiguous in that it is unclear whether Employers' Insurance intended its definitions of "Who is An Insured" in the Uninsured Motorist section of the policy to supersede the definitions provided in the Business Auto Coverage provision and that this ambiguity should be resolved in Berg's favor.

Berg's policy argument fails. Section 143a of the Illinois Insurance Code governs both uninsured and underinsured motorist coverage in Illinois. "[T]he purpose of the statute, and the public policy expressed therein, is to provide protection to policy holders and named insureds for whom protection is specifically contracted, and not to provide protection to third parties who are

6

strangers to the contract of insurance." *Rockford Mutual Insurance Co. v. Economy Fire & Casualty Co.*, 217 Ill. App.3d 181, 186-87 (5th Dist. 1991). Here, Performance Tank and Employers' Insurance negotiated the Business Auto Policy. Had the parties intended to negotiate different uninsured motorist coverage, they could have done so. They did not. The parties can designate who are insureds without contravening Section 143a. *Cohs v. Western States Ins. Co.*, 329 Ill.App.3d 930 (Ill.App.1 Dist. 2002) (*Cohs*).[2]

Berg's ambiguity argument also fails. "In construing an insurance policy, the court's primary purpose is to determine and give effect to the intentions of the parties, as expressed in the agreement." *American States Ins. Co. v. Kolans*, 177 Ill.2d 473 (Ill. 1997). Moreover, "if the words in the policy are clear and unambiguous, there is no need for construction and the court will enforce the policy according to its terms as written." *Menke v. Country Mutual Insurance Co.*, 78 Ill.2d 420 (Ill. 1986). A policy term "is not ambiguous because the term is not defined within the policy or because the parties can suggest creative possibilities for its meaning. In addition, a court cannot read an ambiguity into a policy just to find in favor of the insured. A policy provision is ambiguous only if it is subject to more than one reasonable interpretation." *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 166 Ill.2d 520, 530, 655 (Ill.,1995).

Performance Tank's Business Auto Policy provides, at the top of the Uninsured Motorist Coverage section, that: "For a covered 'auto' licensed" in Illinois "this endorsement modifies

---

[2] Berg asserts that the holding in *Cohs* is not controlling because the policy at issue in *Cohs* was an *under*insured motor vehicle endorsement, which is non-mandatory in Illinois, and that because this case involves an *un*insured motor vehicle endorsement, which is mandatory in Illinois, the outcome should be different. However, the Illinois Supreme Court has held that "[s]ection 143a-2 of the Insurance Code sets out conditions and procedures for issuing or rejecting *both* uninsured and underinsured motorist coverage. *Lee v. John Deere Ins. Co.*, 208 Ill.2d 38 (Ill. 2003).

insurance provided under the following: Business Auto Coverage Form . . ." There is no ambiguity that the Uninsured Motorist Coverage provision modifies the Business Auto Coverage Policy. There is no ambiguity as to whether the uninsured motor vehicle coverage differs from the coverage under the Policy's liability; it plainly and unambiguously does.

The Uninsured Motorist Coverage language in the Policy states, in relevant part, that it covers: "You" and also "Anyone else '*occupying*' a covered 'auto' . . . ." (emphasis added). The term "occupying" is defined as "in upon, getting in, on, out or off." Berg argues that he is covered under one or both of these sections.

First, Berg asserts that the reference to "You" must include employees and agents of the corporation; Employers' Insurance asserts that it only applies to the corporation itself. Berg argues that the Uninsured Motorist Coverage provision is otherwise illusory because Performance is a corporation; and, thus, no coverage would exist under this coverage provision. This is obviously incorrect. At the very least, the provision covers those "occupying" a covered "auto." Illinois courts have found that similar provisions are not illusory. *Polzin v. Phoenix of Hartford Ins. Co.*, 5 Ill. App.3d 84, 84 (Ill. App. 1972). Illusory coverage means that the policy, when read as a whole, provides no coverage at all. Only where there is no possibility under any set of facts for coverage is the policy deemed illusory. *W.E. Erickson v. Chicago Title Ins.*, 266 Ill. App.3d 905 (1st Dist. 1994). [edited]

Second, Berg claims he was "occupying" the Jeep Cherokee for purposes of coverage under the Uninsured Motorist Coverage form. The underlying facts in this case are nearly identical to those found in *Cohs*, where the court held that there was no coverage because the employee was not "occupying" the vehicle. As here, the injured party (Cohs) sought a

8

declaration that an insurance policy issued to his employer provided Cohs with underinsured motorist coverage for personal injuries he sustained while at work. Cohs worked as a service technician for an employer who engaged in the business of assisting gasoline service stations with causing, from inside the service station, the distribution of gasoline from underground tanks to pumps where the customers received the fuel. Cohs was sent by his employer to service a gas station, where he was instructed to install and program a tank monitoring system for the four fuel tanks. Cohs drove to the station in a van owned by his employer. When Cohs arrived at the gas station, he pulled up to the premium gas tank, removed the manhole cover or cap, and installed a probe into the tank. He then used a variety of tools that he retrieved from his van. He then moved from the van to work on the remaining three tanks, which were within close proximity to one another. After he completed his work, he went inside the service station to begin programming a computer system and then walked back to the premium tank. He then returned to his van to obtain a part and returned to the premium tank. He was working at the premium tank, located twelve to fifteen feet from his van, for approximately one to two minutes when he was struck by a motor vehicle that was uninsured. The insurance policy held by Cohs's employer had a virtually identical Illinois underinsured motorist coverage, which stated, in relevant part:

> B. WHO IS AN INSURED
> 1. You
>                \* \* \*
> 3. Anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.'
>               \* \* \*

*Cohs*, 329 Ill App.3d at 932.

The court applied the test set out in *Greer v. Kenilworth Insurance Co.*, 60 Ill.App.3d 22, 25 (1978), "the necessary elements for imposition of liability upon the insurer are the existence of some nexus or relationship between the insured and the covered automobile and, in addition, either actual or virtual physical contact with the insured vehicle." *Id.*, at 933. The court concluded that a nexus existed between Cohs and the covered automobile because Cohs drove his van to the gas station in the course of his employment. *Id.*, at 934. However, the court found that there was no liability because he was approximately twelve to fifteen feet away from the van at the time of the accident, and he had not been at the vehicle for one to two minutes. *Id.*, at 934.

Here, as in *Cohs*, there is a nexus between the insured and the covered vehicle. Also here, at the time of the accident, Berg was several feet away from the Jeep Cherokee. He obtained tools and equipment and then walked away from the Jeep Cherokee to the location of the in-ground fuel monitoring probes and sensors, where he was struck by a tow truck. Berg was not in actual or virtual contact with the insured vehicle, which was fifteen feet away at the time of the impact.

Berg is not entitled to coverage under Performance Tank's Business Auto Policy provided by Employers' Insurance.

## CONCLUSION

For the foregoing reasons, summary judgment is granted to Employers' Fire Insurance Company and denied as to Laird T. Berg.

Dated: January 25, 2007

JOHN W. DARRAH
United States District Court Judge